No. 36,597

MELVIN LEWIS ELLIOTT, *Petitioner,* v. ROBERT H. HUDSPETH, Warden of the Kansas State Penitentiary, *Respondent.*

(170 P. 2d 626)

Opinion filed July 6, 1946.

*David H. Fisher,* of Topeka, was on the briefs for the petitioner.

*A. B. Mitchell,* attorney general, and *Leon W. Lundblade,* assistant attorney general, were on the briefs for the respondent.

The opinion of the court was delivered by

THIELE, J.: This is an original proceeding in which petitioner seeks a writ of habeas corpus to secure his release from the state penitentiary, to which he had been committed by the judgment of the district court of Hamilton county on October 26, 1942, for the, crime of larceny from a dwelling house as defined in G. S. 1935, 21-537.

The petitioner, in his own behalf, filed his application for the writ, alleging in substance that he was confined to the Oregon State Mental Hospital at Salem, Ore., in the last part of May or first part of June, 1938, and that he escaped July 5, 1938, and had not as yet been apprehended, and that the records would show he was incarcerated in the Federal Hospital for Mental Cases at Springfield, Mo.; that he could not have been responsible for the crime alleged to have been committed in Syracuse, Kan., because he was insane at the time; and he alleged further that he had no attorney, was denied counsel, begged the court to hire his own counsel and was refused that right, was forced to make a confession by the duress and coercion of the officers of Hamilton county, Kan., and was forced to plead guilty. He also filed with his application a statement of facts, to which reference will be made later, as well as a motion that this court appoint counsel to assist him in preparing and presenting his application. This motion was allowed and David H. Fisher, a reputable and competent attorney at law, was appointed to assist the petitioner and has so acted.

Briefly stated, the answer of the respondent denied the allegations of the application for the writ and alleged that petitioner was lawfully in his custody by reason of a valid judgment and sentence of the district court of Hamilton county rendered October 26, 1942, and copies of the information, judgment, commitment, statement of the district judge, statement of the county attorney, all being records of the Kansas State Penitentiary, were attached. The answer further stated that during the progress of an attempted jail break on October 23, 1942, some force was exercised upon petitioner in the process of quelling a riot and attempted jail break of the petitioner and some other prisoners in Hamilton county as shown by affidavits of

the ex-sheriff, ex-deputy sheriff and ex-deputy county attorney, attached to the answer, as well as some supporting affidavits of the chief of police of Garden City, Kan., and of R. S. Field, who was appointed attorney for the petitioner at the time of his trial in Hamilton county. All of these affidavits will be mentioned later herein.

To this answer of respondent petitioner filed a reply, reiterating in more extended form the allegations of his application and statement, and attaching certain certificates and letters concerning his commitment to the Oregon State Hospital and the Medical Center for Federal Prisoners at Springfield, Mo., reference thereto being later made.

The respondent prepared an abstract including the pleadings and some of the records and affidavits referred to and the petitioner filed a counter abstract including others.

The cause is submitted to the court on the pleadings and record thus made, and on the written briefs of the petitioner and respondent.

Limits of space do not permit a full review of the record thus presented. We shall take up the various contentions of the petitioner and refer sufficiently to the record to dispose of them.

The petitioner first contends that he was insane at the time of the commission of the offense in Hamilton county, Kansas, on or about October 11, 1942. We first notice his own proof that he was insane. With respect to his commitment in the Oregon State Hospital, there is no specific showing of any finding of insanity, but by certified copies of various documents it is shown Melvin Elliott, who was admitted from Marion county (Oregon) on May 9, 1938, escaped July 5, 1938, and was discharged December 16, 1938. A letter addressed to petitioner's attorney, written under date of March 22, 1946, by C. E. Bates, M. D., a member of the medical staff of the hospital, states Elliott was committed May 9, 1938, escaped July 5, 1938, was not apprehended and was given a full discharge December 16, 1938, "condition not insane." Attached to the letter is a certificate that the information is taken from the hospital records.

With respect to his later confinement or imprisonment a letter addressed to petitioner's counsel, and written in response to a letter from him, is attached. It is from the Supervisor, Classification and Parole, of the Medical Center for Federal Prisoners at Springfield,

Mo., and states that Elliott was sentenced to a term of three years for national motor-vehicle theft act and transferred to the center in 1940 and released February 7, 1941, on conditional parole. Other parts of the letter need not be noted. Petitioner also supplied a verified certificate from the warden of the United States Penitentiary at McNeil Island, Wash., showing that Elliott was discharged February 7, 1941, from the Medical Center for Federal Prisoners at Springfield, Mo.; that he violated the conditions of his release and was returned April 18, 1941, to the penitentiary where he was confined until finally discharged on December 14, 1941, as shown by the records of the penitentiary. As a matter of fact this proof does not show the petitioner was insane in October, 1942, but does tend to show that even though he had been insane when committed to the Oregon State Hospital, he was discharged from it as not insane. The reason for his commitment to the Medical Center at Springfield, Mo., is not shown, but whatever the reason was, he was conditionally released, apprehended for parole violation and finally discharged. This does not prove petitioner was insane at any time and certainly does not prove he was insane in October, 1942. Petitioner in his own interest filed an affidavit that he informed the officers that he was an escaped inmate of the Oregon State Hospital but they made no attempt to investigate to determine if he was of sound mind. It may be stated the proof shows that Elliott was arrested in Finney county, Kansas, on October 11, 1942, and was confined in the jail at Garden City until October 15, 1942, when he was taken to Syracuse in Hamilton county, where he was held until trial and after trial taken to Lansing to the state penitentiary.

The respondent produced an affidavit of the chief of police of Garden City and attached were copies of written reports made at the time by the officers arresting petitioner and two companions. None of these documents make any reference to any claim by Elliott that he was ever or then insane. The affidavit does state that Elliott was not refused counsel or the right to communicate with members of his family (his wife was arrested with him) and that Elliott was told why he was arrested. R. S. Field, who was appointed to defend Elliott at his trial, states that after his appointment he conferred with Elliott and his companion Nash, and explained the charge to Elliott and asked if he understood it and was answered in the affirmative; and that Elliott exhibited a fair degree of intelligence and appeared to fully understand all matters explained to him.

Without detailing the contents, Bray, then sheriff, and Frazee, then deputy county attorney, of Hamilton county, each testified to conversations with Elliott before his trial and they were of opinion he was of sound mind and understood everything explained to him. Other evidence bearing on the question of petitioner's claim of insanity will not be set forth other than to note that after he pleaded guilty the district judge inquired of him if there was any legal reason why he should not be sentenced and he assigned no reason.

On the whole evidence adduced we conclude that petitioner was not insane either at the time of the crime or at the time of trial. It is not necessary that we treat the question of petitioner's sanity further, nor discuss any propositions of law that might be applicable if he were insane at either of those times.

We shall treat together petitioner's allegations that he begged the court to hire his own counsel and was refused that right; that he was forced to make a confession by duress and coercion of the officers of Hamilton county, and that he was forced to plead guilty. As has been noted, when petitioner filed his application for the writ, he also filed a statement which we treat as his deposition. Summarized, the petitioner states that he was arrested just west of Garden City and placed in the city jail there and although he repeatedly asked 'he was kept in ignorance of the charge against him; that he demanded that he be allowed to consult counsel which resulted in his being transferred to the Hamilton county jail, where he was held three days before being told by the deputy county attorney Frazee and sheriff Bray that he was held on a larceny charge; that he had previously been convicted of a felony and they would see he got twenty-one years in the state penitentiary if he did not plead guilty. He refused to agree and his refusal brought about ten days of abusive treatment upon the culmination of which sheriff Bray and his deputy Davis assaulted him and beat him with a blackjack and their fists and warned him he had better plead guilty; that he pleaded with them not to beat him and that he desired counsel to tell him what he should do; that he sought to communicate with members of his family; that he tried to tell them of his mental condition, and that later he was forced by the threats of Frazee, Bray and Davis to sign a statement that the brutality upon him was inflicted upon him in an attempted jail break and he now repudiated that statement; that when he was taken into court he was told, in the presence of the district judge and others that he had

better not double-cross the mentioned officials and plead not guilty for they could clear themselves with his signed statement; that at all times when confined in both Garden City and Syracuse he was not allowed to communicate with anyone, and although his wife was being held he was not allowed to write or talk to her; that he was held incommunicado, denied the right to choose his own counsel, and every right guaranteed by the Fourteenth Amendment. It is also noted that after the respondent's answer had been filed, and as part of petitioner's reply thereto, his own affidavits were attached. They cover about the same matters as in his statement, expanding on matters connected with the aforementioned jail break.

In a general way it may be said the respondent's proof denied each of petitioner's assertions. No good purpose will be subserved by making an analysis of all the evidence. It may be first observed that when the petitioner and one Nash, who was jointly charged with him, were arraigned the trial court inquired if they had counsel and each replied he had not and had no means to employ any, whereupon the court appointed R. S. Field, an attorney of Syracuse, to represent them and continued the cause until such time as counsel was ready for arraignment. Later arraignment was had and each defendant pleaded guilty. The state moved for judgment and sentence on the pleas of guilty and the court inquired of each of them if they had a legal cause why judgment and sentence should not be pronounced on their pleas of guilty, and no reason being given by them or their counsel, the court pronounced judgment and sentenced them.

The affidavit of Richardson, chief of police of Garden City, entirely refutes any claim of deprivation of any right of petitioner while he was in jail at Garden City. It may here be said that at the time of his arrest an officer in Finney county made an inventory of goods found in possession of the petitioner, who now argues he was not guilty because all of the articles he was charged with having stolen were not listed thereon. At least the field glasses were, and as the value of the goods stolen was not material to the offense with which petitioner was charged, we shall not discuss that point further. However, in the affidavit of sheriff Bray, it is shown the defendant had the goods in possession when arrested and the same were later identified by the owner from whom they were stolen. The sheriff further testified to a conversation with petitioner's wife, and that due to other property being found in

the petitioner's car, the arrested parties were held in Garden City for a few days to check up on the property and they were then brought to Syracuse. He then gives the details of the attempted jail break, which need not be detailed; that Elliott and Nash made a sworn statement with respect thereto, a copy of which is in the record. The sheriff also testified that after the jail break was foiled, no violence was done to Elliott and Nash and no threats made to them. The sheriff specially denied that petitioner was denied the right to send out letters to his friends or family; that his wife did not see him because she told the sheriff she did not want to see her husband; that when petitioner was arraigned on October 26, 1942, a lawyer was appointed for him; that there were no threats made to the petitioner by the sheriff, his undersheriff, the county attorney or the judge and that his plea was made voluntarily in the presence of and by advice of his counsel; that he had read petitioner's application for the writ of habeas corpus and the statements as to abuse and denial of rights, and except as stated in his affidavit, they were totally untrue. The affidavits of Davis, deputy sheriff, and Frazee, deputy county attorney, at the time, although varying as to matters covered, substantiate the statements of sheriff Bray. The affidavit of R. S. Field discloses that he has practiced law for many years, the last nineteen in Syracuse where he was at one time county attorney; that on October 26, 1942, he was appointed by District Judge Evans to represent petitioner and Nash, charged with grand larceny. We pause here to say petitioner seeks to make some point of the use of the term "grand larceny" contending he was charged with burglary and therefore advice given him may not have been sound. The charge actually was larceny in a dwelling house where value is not material but where the offense is a felony (G. S. 1935, 21-513). The point is not good. The witness further stated that upon being appointed he took the two defendants into the jury room, apart from the court, and explained the charge in detail, the probable penalty, and asked if they understood, and each answered in the affirmative; that each defendant exhibited a fair degree of intelligence and appeared to understand fully and voluntarily expressed a willingness to enter a plea of guilty; that witness inquired if either knew of any defense and each answered he knew of none; that neither of the defendants complained of any abuse or ill treatment at the hands of the sheriff or any other officer and there were no

marks or bruises visible to the witness upon either of the defendants; that each defendant understood the charge and the result of a plea of guilty, and that if he had a substantial defense or a complaint to make of any treatment at the hands of officers it would be reported at once to the court and that any defense or claims of any kind would be thoroughly investigated before the court would pass sentence, and that it was made clear to the defendants they were under no obligation to enter a plea of guilty, but were entitled to a trial by jury if they so desired and all they needed do was to so notify the court.

We note that among other affidavits is one made at the time of the arrest by the wife of the petitioner, and another recently made by her repudiating the first. Petitioner objects to the first for claimed incompetency of the wife as a witness against her husband (G. S. 1935, 60-2805, *Third*). Without any concession the contention is good, we ignore the affidavit.

Mention has been made of an attempt by Elliott, Nash who was arrested and tried with and for the same offense as Elliott, and one Mead, to assault Bray, the sheriff of Hamilton county, and of Elliott's testimony as to brutality inflicted upon him, as well as evidence of the sheriff and others giving their version. This opinion need not be encumbered with the details. We have read all of the record, and conclude that no brutality was inflicted upon Elliott or the other prisoners, but only such force was exerted by the sheriff and his deputy as was necessary to prevent an escape.

This being an original proceeding the burden is on this court to determine the facts. Upon consideration of the whole record, only a part of which is recited above, we find that petitioner was not insane at the time of the commission of the offense to which he pleaded guilty or at the time of his trial; that he was not denied counsel; that he did not beg the trial court for counsel of his own choosing but informed the trial court that he had no counsel and no money to hire any and the court, as required by statute, appointed counsel for him, who duly represented him; that the petitioner was not deprived of any right of counsel nor to communicate with anyone of his own choosing; that he was not coerced or forced in any manner to make any confession of the crime with which he was charged nor to enter a plea of guilty thereto, and that at his trial all statutory requirements were had and met.

Little more need be said, for with the facts resolved against him, there is no occasion to discuss the few questions of law which might otherwise be involved.

The writ prayed for is denied.